**WO**

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**CYBERHEAT, INC.,**<br><br>Defendant. | No. CIV 05-0457-TUC-DCB<br><br>**ORDER FOR PERMANENT INJUNCTION** |

WHEREAS, Plaintiff, United States of America, filed its amended complaint for permanent injunction, civil penalties, and other equitable relief pursuant to 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), 56(a), and 57b, and under Paragraph 7(a) of the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM" or the "CAN-SPAM Act"), 15 U.S.C. § 7706(a), against Defendant Cyberheat, Inc., alleging violations of Paragraph 5(a) and (d) of CAN-SPAM, 15 U.S.C. § 7704(a) and (d), and the Federal Trade Commission's Adult Labeling Rule (the "Rule"), 16 C.F.R. Part 316.4;

WHEREAS, the Parties to this action agree to settlement of this action without adjudication of any issue of fact or law and without Defendant admitting liability for any of the matters alleged in the amended complaint;

THEREFORE, on the joint motion of the Parties, it is hereby **ORDERED AND DECREED** as follows:

A.      This Court has jurisdiction over the subject matter pursuant to 15 U.S.C. §§ 45(m)(1)(a), 53(b), 56(a), 57b and 7706(a), and 28 U.S.C. §§ 1331, 1337(a), 1345 and 1355.

B.      Venue is proper as to all Parties in the District of Arizona.

C.      The activities of Defendant are in or affecting commerce, as defined in Paragraph
4 of the Federal Trade Commission Act, 15 U.S.C. § 44.

D.      The amended complaint states a claim upon which relief may be granted against
Defendant under Paragraphs 5(a) and (d) of the CAN-SPAM Act, 15 U.S.C. §§
7704(a) and 7704(d), and the Rule, 16 C.F.R. Part 316.4.

E.      The Parties hereto stipulate and agree to this Order, without trial or final
adjudication of any issue of fact or law, to settle and resolve all matters in dispute
arising from the allegations in the amended complaint.  Although the Defendant
agrees to enter into this Order, Defendant denies all of the allegations set forth in
the amended complaint other than the jurisdictional facts set forth in the amended
complaint.

F.      Defendant hereby waives all rights to appeal or otherwise challenge or contest the
validity of this Order.

G.      Defendant agrees that this Order does not entitle Defendant to seek or to obtain
attorneys' fees as a prevailing party under the Equal Access to Justice Act, 28
U.S.C. § 2412, and Defendant further waives any rights to attorneys' fees that
may arise under said provision of law.

H.      Entry of this Order is in the public interest.

## DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

A.      "Affiliate Program" means any agreement whereby any Person agrees, pursuant
to terms and conditions agreed to by Defendant and such Person, to provide
Defendant with or to refer to Defendant potential or actual customers.

B.     "Affirmative consent," when used with respect to a CEM, means that the recipient expressly consented to receive the message, either in response to a clear and conspicuous request for such consent or at the recipient's own initiative; and if the message is from a party other than the party to which the recipient communicated such consent, the recipient was given clear and conspicuous notice at the time the consent was communicated that the recipient's electronic mail address could be transferred to such other party for the purpose of initiating CEMs. 15 U.S.C. § 7702(1).

C.     "Commercial electronic mail message" or "CEM" means any email message the primary purpose of which is the commercial advertisement or promotion of a commercial product or service (including content on an Internet web site operated for a commercial purpose). 15 U.S.C. § 7702(2)(A).

D.     "Commission" means the Federal Trade Commission.

E.     "Defendant" means: (1) Cyberheat, Inc. ("Cyberheat"); (2) TB Advertising Services, AVV ("TBA"); (3) any entity that provides managerial services or employee staffing to another Defendant, where such services or employees' duties relate directly to the Affiliate Program; and (4) any Affiliate Program-related or CEM-related successor or assign of an entity listed at parts (1), (2), or (3) of this definition, where said successor or assign attains that status after the execution of this Order by Defendant.

F.     "Document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if

necessary, into reasonably usable form through detection devices.  A draft or non-identical copy is a separate document within the meaning of the term.

G.    "Email address" means a destination, commonly expressed as a string of characters, consisting of a unique user name or mailbox (commonly referred to as the "local part") and a reference to an Internet domain (commonly referred to as the "domain part"), whether or not displayed, to which an email message can be sent or delivered.  15 U.S.C. § 7702(5).

H.    "Email message" means a message sent to a unique electronic mail address.

I.    "Email campaign" means the use of CEMs by any Person who participates in Defendant's Affiliate Program to promote Defendant's products, services, or Internet web sites.

J.    "Functioning" means, in relation to email addresses and/or hyperlinks, that said email address or hyperlink remains operational for at least 30 days after the sending by or on behalf of Defendant of a CEM or other such message containing the email address or hyperlink.

K.    "Initiate," when used with respect to a CEM, means to originate or transmit such message or to procure the origination or transmission of such message, but shall not include actions that constitute routine conveyance of such message.  For purposes of this Order, more than one Person may be considered to have initiated a message.  15 U.S.C. § 7702(9).

L.    "Person" means a natural person or a corporation, partnership, proprietorship, limited liability company, or other organization or legal entity, including an association, cooperative, or agency, or other group or combination acting as an entity.

M.    "Procure," when used with respect to the initiation of a CEM, means intentionally to pay or provide other consideration to, or induce, another person to initiate such a message on one's behalf.  15 U.S.C. § 7702(12).  Provided, however, that for purposes of this Order, Defendant has not procured the initiation of CEMs that violate the CAN-SPAM Act or its implementing regulations: (1) if it has contractually prohibited affiliates from sending commercial electronic mail or, in the case of Persons who are not affiliates, has not requested any such Persons to send commercial electronic mail; and (2) if it has materially complied with the requirements set forth in Paragraph III of this Order.

N.    "Recipient," when used with respect to a CEM, means an authorized user of the electronic mail address to which the message was sent or delivered.  If a recipient of a CEM has one or more electronic mail addresses in addition to the address to which the message was sent or delivered, the recipient shall be treated as a separate recipient with respect to each such address at which the CEM was received.  If an electronic mail address is reassigned to a new user, the new user shall not be treated as a recipient of any CEM sent or delivered to that address before it was reassigned.  15 U.S.C. § 7702(14).

O.    "Representative" means: (1) Defendant's officers, agents, servants, employees, and attorneys acting for or on behalf of a Defendant; and/or (2) those Persons in active concert or participation with a Defendant who receive actual notice of this Order by personal service or otherwise.

P.    "Sender," when used with respect to the initiation of a CEM, means a Person who initiates such a message and whose product, service, or Internet web site is advertised or promoted by the message.  15 U.S.C. § 7702(16).

Q.     "Sexually explicit conduct" means actual or simulated: sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; bestiality; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area of any person, as set forth in 18 U.S.C. § 2256.

R.     "Sexually oriented material" means any material that depicts sexually explicit conduct, unless the depiction constitutes a small and insignificant part of the whole, the remainder of which is not primarily devoted to sexual matters.

S.     "Valid physical postal address" means a sender's current street address, a Post Office box a sender has registered with the United States Postal Service, or a private mailbox a sender has registered with a commercial mail receiving agency that is established pursuant to United States Postal Service regulations.

## INJUNCTIVE PROVISIONS

### I.  PROHIBITION AGAINST VIOLATING THE CAN-SPAM ACT

**IT IS FURTHER ORDERED** that Defendant and its Representatives are hereby permanently restrained and enjoined from violating the CAN-SPAM Act, 15 U.S.C. §§ 7701 *et seq.*, as currently promulgated or as it may hereafter be amended, or any rule, regulation, or requirement adopted pursuant thereto, including, but not limited to, initiating the transmission of a CEM that:

A.     Fails to include a functioning return electronic mail address or other Internet-based mechanism, clearly and conspicuously displayed, that a recipient could use to submit a reply email message or other form of Internet-based communication requesting not to receive further CEMs from the sender at the electronic mail address where the message was received;

B.      Fails to include a clear and conspicuous notice of a recipient's opportunity to decline to receive further CEMs from the sender; and

C.      Fails to include the sender's valid physical postal address.

Notwithstanding any other language herein, in the event that Congress amends or modifies the CAN-SPAM Act, and/or the Commission promulgates rules that modify or supersede the Rule, in whole or in part, then: (1) Paragraph I of this Order shall be deemed to have been automatically amended to incorporate said modification or change; and (2) Defendant shall comply fully and completely with all applicable requirements thereof, on and after the effective date of any such modification or change.

## II. PROHIBITION AGAINST VIOLATING THE RULE

**IT IS FURTHER ORDERED** that Defendant and its Representatives are hereby permanently restrained and enjoined from violating the Rule, 16 C.F.R. § 316.4, as currently promulgated or as it may hereafter be amended, or any rule, regulation, or requirement adopted pursuant thereto, including, but not limited to, initiating the transmission of a CEM that includes sexually oriented material to anyone who has not given affirmative consent that:

A.      Fails to include the phrase "SEXUALLY-EXPLICIT: " as the first nineteen (19) characters at the beginning of the subject line of the message;

B.      Includes sexually oriented materials within the subject line of the message;

C.      Includes sexually oriented materials within the content of the message that is initially viewable by the recipient, when the message is opened by the recipient and absent any further action by the recipient.

Notwithstanding any other language herein, in the event that Congress amends or modifies the CAN-SPAM Act, and/or the Commission promulgates rules that modify or supersede the Rule, in whole or in part, then: (1) Paragraph II of this Order shall be deemed to have been

automatically amended to incorporate said modification or change; and (2) Defendant shall comply fully and completely with all applicable requirements thereof, on and after the effective date of any such modification or change.

### III. MONITORING FOR COMPLIANCE

**IT IS FURTHER ORDERED** that Defendant and its Representatives are hereby permanently restrained and enjoined from failing to immediately take the steps set forth at Paragraphs III.A through III.P below to ensure compliance with Paragraphs I and II of this Order.

A.    Requiring each Person who participates in Defendant's Affiliate Program (an "affiliate") to provide identifying information to Defendant, including:

1.    the affiliate's first and last name, valid physical address, country, telephone number, date of birth, email address, and bank account information (where used to make payments to that Person).  In the event that the affiliate is not a natural person, but is a corporation, partnership, proprietorship, limited liability company, or other organization or legal entity, including an association, cooperative, agency, or other group or combination acting as an entity, Defendant shall also require from that affiliate the first and last name, valid physical address, country, telephone number, date of birth, and email address of at least one natural person who owns, manages, controls, or otherwise represents that affiliate;

2.    if the natural person(s) listed in Paragraph III.A.1 reside(s) in the United States, either the Employer Identification Number ("EIN"), if the affiliate is an entity, or the person's Social Security Number, if the affiliate is a natural person or if the affiliate entity has no EIN; and

3.      if the natural person(s) listed in Paragraph III.A.1 resides outside of the United States, if available, a unique, personally-identifying number issued by a governmental unit with jurisdiction over that person;

B.      Requiring via contract provision each affiliate to provide identifying information to Defendant concerning any of that affiliate's sub-affiliates who initiate CEMs on Defendant's behalf.  Such identifying information shall include the same information as required by Paragraph III.A and shall be required prior to that Person's participation in Defendant's Affiliate Program or immediately after any change in or to that participant's sub-affiliates;

C.      Providing each affiliate with a copy of this Order;

D.      Within thirty (30) days of providing a copy of this Order pursuant to Paragraph III.C, obtaining from each affiliate who wishes to continue to participate or to begin to participate in Defendant's Affiliate Program: (1) an express written agreement to comply with this Order, the Rule, and the CAN-SPAM Act, and (2) an acknowledgment of receipt of this Order.  The Parties agree that electronic acknowledgement or acceptance specifically satisfies the requirements of this Paragraph (i.e., items (1) and (2) in the immediately foregoing sentence);

E.      Requiring via contractual provision each Person who initiates CEMs on Defendant's behalf to submit to Defendant, at least seven (7) days prior to the start of an email campaign on Defendant's behalf, the following information:

1.      the email address(es) from which each proposed email campaign will be sent;

2.      the email address(es) to which each proposed email campaign will be sent;

3.      a certification as to how that Person obtained each email address that the

Person intends to use in such CEMs;

4.      the subject line, body, and source code for each email message in the

proposed email campaign; and

5.      the proposed dates that the CEMs in the email campaign will be sent.

F.      At least three (3) days prior to the start of an email campaign that has been

submitted to Defendant under Paragraph III.E, Defendant shall review that email

campaign for compliance with the CAN-SPAM Act, the Rule, and this Order.  If,

after reviewing such email campaign, Defendant determines that the email

campaign is in compliance with the CAN-SPAM Act, the Rule, and this Order,

Defendant shall provide to the Person who submitted that email campaign a

written acknowledgment of Defendant's approval of such email campaign.  If,

after reviewing such email campaign, Defendant determines that the email

campaign is not in compliance with the CAN-SPAM Act, the Rule, or this Order,

Defendant shall take immediate steps to seek to ensure that such email campaign

is not initiated on the Defendant's behalf;

G.      Defendant shall establish, implement, and maintain a functioning email address or

other Internet-based mechanism that recipients of CEMs actually or allegedly

initiated on Defendant's behalf may use to submit directly to Defendant a reply

email message or other form of Internet-based communication requesting not to

receive further CEMs from the sender of that message;

H.      Requiring via contractual provision each Person who initiates CEMs on

Defendant's behalf to include in each such CEM a functioning hyperlink or other

Internet-based mechanism, clearly and conspicuously disclosed, that recipient can

use to access the email address or other Internet-based mechanism established by

Defendant pursuant to Paragraph III.G;

I.  Within five (5) days of receiving a reply email message or other form of Internet-based communication from a recipient pursuant to the procedures established under Paragraph III.G, Defendant shall demand that each Person who initiated the complained-of CEM(s) stop initiating such CEMs to the complaining recipient. Should said Person refuse to cease and desist from the complained-of sending of CEM within a reasonable period of time after such demand from Defendant, then Defendant shall terminate said Person from the Affiliate Program in the manner and upon the terms set forth at Paragraph III.P below;

J.  Requiring each consumer who registers or enrolls in Defendant's web sites to identify the manner in which they were directed to Defendant's web sites (i.e., email message, banner ad, pop-up window, etc.).  If a consumer indicates that he or she was referred to Defendant's web sites through a CEM, Defendant shall monitor the Person who sent such CEM to ensure that Person's continued compliance with the CAN-SPAM Act, the Rule, and this Order;

K.  Defendant shall establish, implement, and maintain a functioning email address or other Internet-based mechanism for receiving and responding to consumer complaints, whether received directly by Defendant or through an intermediary, relating to a possible violation of the CAN-SPAM Act, the Rule, and this Order;

L.  Requiring each Person who initiates CEMs on Defendant's behalf to include in each email message that is initiated on Defendant's behalf a functioning hyperlink or other Internet-based mechanism, clearly and conspicuously disclosed, that recipients can use to access the email address or other Internet-based mechanism established by Defendant pursuant to Paragraph III.K;

M.    Defendant shall establish, implement, and maintain a commercially-reasonable procedure to ascertain the number and nature of consumer complaints received each month for each affiliate relating to a possible violation of the CAN-SPAM Act, the Rule, and this Order;

N.    Defendant shall promptly and fully investigate, in accordance with industry standards, any information received by Defendant regarding a CEM that allegedly promotes Defendant's web site(s), including, but not limited to, responses received pursuant to Paragraphs III.G and III.K, and complaints received from consumers, Internet Service Providers, the Commission or other law enforcement agencies, to determine whether such CEM violates a contractual provision of the Defendant's Affiliate Program, the Rule, the CAN-SPAM Act, or any provision of this Order.  However, notwithstanding the requirements of Paragraph III.N set forth immediately above, Defendant shall not be in violation of Paragraph III.N if, within thirty (30) days after receiving said complaint, Defendant terminates the complained-of Person, provides all relevant complaint-related and affiliate-related information to the Commission, and does not reinstate said Person until and unless the Commission notifies Defendant that the Commission has cleared said Person of any CEM-related wrongdoing;

O.    Requiring via contractual provision each Person who participates in Defendant's Affiliate Program to create, maintain, and retain records and documents that demonstrate each Person's full compliance with each provision of this Order; and

P.    Defendant shall immediately terminate from Defendant's Affiliate Program, and cease payment to, any Person who Defendant reasonably concludes: (1) has sent a CEM promoting Defendant's web sites that violates a contractual provision of

Defendant's Affiliate Program agreement; (2) violates a contractual provision of Defendant's Affiliate Program agreement referenced above at Paragraphs III.B, III.E, III.H, and/or III.O; (3) violates the CAN-SPAM Act and/or the Rule; and/or (4) violates any other provision of this Order.  Defendant shall not reinstate any Person who has been terminated pursuant to this Order, provided, however, that Defendant shall not be in violation of Paragraph III.P unless Defendant knew or should have known that the reinstated Person had previously been terminated.

Provided, however, that this Paragraph does not authorize or require Defendant to take any action that violates any federal, state, or local law.  Furthermore, no natural person shall be liable for any violation of Paragraph III until and unless: (1) the person has been notified in writing of the government's intent to seek contempt against such person individually; and (2) within thirty (30) days after actual receipt of such notice, said person: (a) has failed to cure the alleged violation; and (b) remains a Representative of a Defendant in a capacity related to the alleged violation or returns to such a position within 24 months of the alleged violation. Notwithstanding any other language herein, however, a person who knowingly and willfully violates this injunction or who knowingly and willfully seeks to avoid receipt of the notice referenced at Paragraph III.P.(1) immediately above shall not be entitled to the safe harbor set forth in this Paragraph.

## IV. PAYMENT

IT IS FURTHER ORDERED that Defendant shall pay a civil penalty, pursuant to Paragraph 5(m)(1)(A) of the Federal Trade Commission Act, 15 U.S.C. § 45(m)(1)(A), in the total amount of $413,000 as follows:

A.      Defendant shall make the payment required by this Paragraph within ten (10) days of the date of receipt by Defendant of notice of entry of this Order by electronic

fund transfer in accordance with the instructions provided by the Office of

Consumer Litigation, Civil Division, U.S. Department of Justice, for appropriate

disposition;

B.     In the event of any default in payment, which default continues for ten (10) days

beyond the due date of payment, the entire unpaid amount, together with interest,

as computed pursuant to 28 U.S.C. § 1961, from the date of default to the date of

payment, shall immediately become due and payable.

## V. COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating

compliance with any provision of this Order:

A.     In relation to any alleged violation of this Order, within thirty (30) days of receipt

of written notice from a representative of the Commission or Plaintiff, Defendant

shall submit additional written reports relating to such alleged violation, sworn to

under penalty of perjury; produce documents relating to such alleged violation for

inspection and copying; appear for deposition in Tucson, Arizona in relation to

such alleged violation; and/or provide entry during normal business hours to any

business location in Defendant's possession, or direct or indirect control, to

inspect the business operation, provided that the original written notice states the

date and time upon which the inspection will occur;

B.     The Commission and Plaintiff are authorized to monitor compliance with this

Order by all other lawful means, including but not limited to, obtaining discovery

from any Person, without further leave of court, using the procedures prescribed

by Fed. R. Civ. P. 30, 31, 33, 34, 36, and 45, provided that the propounding Party

provides to Defendant a copy of any such discovery so that Defendant has a

reasonable period of time within which to submit its objections, if any, prior to the due date set forth for compliance by the Person upon whom such discovery was propounded; and

C.      Defendant shall permit representatives of the Commission or Plaintiff to interview any current employee of a Defendant who has agreed to such an interview, relating in any way to any conduct subject to this Order, provided that the propounding Party provides to Defendant a written copy of its notice to conduct such interview so that Defendant has a reasonable period of time within which to submit its objections, if any, prior to the due date set forth for compliance by the Person to be interviewed.  The Person interviewed may have counsel present, as may Defendant.

D.      Defendant shall permit representatives of the Commission or Plaintiff to interview any former employee, consultant, independent contractor, representative, or agent who has agreed to such an interview relating in any way to any conduct subject to this Order.

Provided, however, that nothing in this Order shall limit the Commission's or Plaintiff's lawful use of compulsory process, pursuant to Paragraphs 9 and 20 of the Federal Trade Commission Act, 15 U.S.C. §§ 49 and 57b-1, to obtain any documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

## VI. COMPLIANCE REPORTING BY DEFENDANT

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this Order may be monitored:

A.      For a period of three (3) years from the date of entry of this Order, Defendant

shall notify the Commission of any changes in corporate structure that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor entity that engages in any acts or practices subject to this Order; the creation or dissolution of a subsidiary or parent that engages in any acts or practices subject to this Order; the filing of a bankruptcy petition; or a change in the corporate name or address, at least thirty (30) days prior to such change, provided that, with respect to any proposed change in the corporation about which Defendant learns less than thirty (30) days prior to the date such action is to take place, Defendant shall notify the Commission as soon as is practicable after obtaining such knowledge.

B.      One hundred eighty (180) days after the date of entry of this Order, Defendant shall provide a written report to the Commission, sworn to under penalty of perjury, setting forth in detail the manner and form in which it has complied and is complying with this Order.  This report shall consist of:

1.      A copy of each acknowledgment of receipt of this Order, obtained pursuant to Paragraphs III and VIII of this Order;

2.      Any changes required to be reported pursuant to Paragraph VI.A;

3.      A list that identifies, to the best of Defendant's knowledge and belief after due inquiry, every Person who is marketing or promoting, through CEMs, any goods or services of Defendant since entry of this Order;

4.      A list of all names under which Defendant has done business since entry of the Order; and

5.      A list of all domain names and web page addresses Defendant has owned

or operated since entry of the Order.

      6.      Copy of each non-identical form contract used in the Affiliate Program (notwithstanding the name given to such program by Defendant) at any time since the execution of this Order.

C.      For the purposes of this Order, Defendant shall, unless otherwise directed by a representative of the Commission, mail all written notifications to the Commission to:

> Associate Director for Enforcement
> Federal Trade Commission
> 601 New Jersey Ave., N.W., Room 2122
> Washington, DC  20580
> Re:    United States v. Cyberheat, Inc.,
>        Civ. No. 05-0457-TUC-DCB

D.      For the purposes of this Order, Defendant shall, unless otherwise directed by a representative of the Plaintiff, mail all written notifications to the Plaintiff to:

> Director, Office of Consumer Litigation
> U.S. Department of Justice - Civil Division
> P.O. Box 386
> Washington, DC  20044
> Re:    DJ# 102-3291

E.      For the purposes of this Order, Plaintiff shall, unless otherwise directed by a representative of Defendant, mail all written notifications to any Defendant to all of the following:

> Attention: Legal Department
> Cyberheat, Inc.
> 6614 East Tanque Verde Road
> Tucson, Arizona 85715

> Attention: Sergio Liberia or Susan Van Lier
> TB Advertising Services, AVV
> Westpunt 7C
> Noord, Aruba, DWI

Paul F. Wellborn III
Wellborn & Wallace, LLC
1175 Peachtree St. NE
100 Colony Square, Suite 300
Atlanta, GA 30361

A. Bates Butler III
Fennemore Craig
One South Church Avenue, Suite 1000
Tucson, AZ 85701-1627

TB Advertising Services, AVV
c/o Richard J. Alan Cahan, Esq.
Becker & Poliakoff, P.A.
121 Alhambra Plaza, 10th Floor
Coral Gables, Florida 33134

TB Advertising Services, AVV
c/o Bradley J. Gross, Esq.
Becker & Poliakoff, P.A.
3111 Stirling Road
Fort Lauderdale, Florida 33312

1.      The contacts designated above for TBA are designated to facilitate

communications between the Plaintiff and the Defendant.  TBA may, at

any time, replace its contact person(s) by providing written notice to all

parties to this Order.

2.      Moreover, any notice, request, consent, approval or other communication

required or permitted to be delivered or remitted hereunder or in relation

hereto shall be in writing and shall be deemed to be delivered or remitted

upon the date of its actual receipt by the recipient party, as evidenced by:

(1) affidavit of courier (if by hand delivery); (2) United States Postal

Service proof of delivery "green card" (if by United States Postal Service,

Certified Mail, Return Receipt requested); or (3) by proof of delivery

signed by or on behalf of the recipient (if by Fed Ex, UPS, DHL, or such other overnight shipping/delivery company).  Moreover, all notices provided under this injunction to entities outside the United States (including but not limited to TBA) shall be treated as served when physically delivered to the appropriate party/address set forth above and/or when such delivery is refused by the recipient party.

No notice provided by a means other than those specifically described above shall be of any force or effect.  Likewise, provision of notice upon counsel, standing alone, shall not constitute provision of notice upon any represented party, which instead must itself be provided with notice as described above.

F.    For purposes of the compliance reporting and monitoring required by this Order, representatives of the Commission and Plaintiff are authorized to communicate directly with Defendant's Officers, Directors, and/or Managers.

## VII. RECORD KEEPING PROVISIONS

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Order, Defendant is hereby restrained and enjoined from failing to create the following records in connection with the marketing, advertising, promotion, offering for sale, or sale of goods or services via CEMs or through Defendant's Affiliate Program:

A.    Creation of records

    1.    Standard accounting records generated in the ordinary course of business including, but not limited to, balance sheets, income statements, and annual reports;

    2.    Accounting records that reflect the revenue generated by sales to

individuals referred through an Affiliate Program and corresponding disbursements to participants in Defendant's Affiliate Program on an individual basis, including bank statements reflecting the most recently deposited check for each such participant paid by check or wire transfer for each such participant paid by wire transfer;

3.  Personnel records accurately reflecting, to the best of Defendant's actual and reasonable belief and knowledge, in relation to each employee or contractor employed or hired by Defendant whose performance or supervisory duties relate directly to Defendant's obligations under this Order : the name, physical address, and telephone number of each such Person; that Person's job title or position; the date upon which the Person commenced work; and the date and reason for the Person's termination, if applicable;

4.  Records that reflect, for every written or oral consumer complaint relating to a possible violation of the CAN-SPAM Act, the Rule, and this Order received by Defendant, whether directly or indirectly or through any third party, including affiliates:

    a.  the consumer's name, address, and telephone number, if such information was provided by the complaining consumer;

    b.  the written complaint or request, if any;

    c.  the basis of the complaint or request, if such information or documentation was provided by the complaining consumer;

    d.  the nature and result of any investigation conducted by Defendant concerning the complaint or request;

Page 20 of 25

  e.  each response sent or made by or on behalf of Defendant and the date of such response to the complaint or request;

  f.  any final resolution of the complaint or request, and the date of such resolution; and

  g.  in the event of no resolution, the reason for such lack of resolution.

5.  Copies of all information obtained, pursuant to Paragraph III, from each Person who participates in Defendant's Affiliate Program;

6.  All documents obtained, created, generated or which in any way relate to the requirements, provisions or terms of this Order, copies of signed and dated acknowledgments of receipt of this Order, required by Paragraphs III and VIII of this Order, and all reports submitted to the Commission pursuant to this Order.

B.  Retention of Records

For a period of six (6) years from the date of entry of this Order, Defendant is hereby restrained and enjoined from failing to retain the records created pursuant to Paragraph VII.A above.

C.  Notice of Staffing/Management Company

Contemporaneous with its execution of this injunction, Defendant shall provide in writing to Plaintiff the name of any entity providing services or employees to Defendant that fall within the scope of Definition E(3).  Should the identity of any Definition E(3) entities change during the three (3) years immediately following the execution of this injunction, Defendant shall provide written notice of each such change, addition, or termination within thirty (30) days of said change.

**VIII. DISTRIBUTION OF ORDER BY DEFENDANT**

**IT IS FURTHER ORDERED** that, for a period of three (3) years from the date of entry of this Order, Defendant shall deliver copies of this Order as directed below:

A.      Defendant must deliver a copy of this Order to its Officers, Directors, and Managers.  Defendant must also deliver a copy or summary (to be agreed upon by counsel for Defendant and the government) of this Order to all of its employees, agents, independent contractors, and persons whose supervisory or performance duties relate directly to Defendant's obligations under this Order.  For current personnel, delivery shall be within ten (10) business days of Defendant's receipt of an entered, executed copy of this Order.  For new personnel, delivery shall occur prior to them assuming their responsibilities.

B.      Defendant must secure a signed and dated written or electronic statement (which signature may be obtained electronically provided that the signature would comply with the signature requirements of the Electronic Signatures in Global and National Commerce Act, ("E-Sign Act"), 15 U.S.C. § 7001 et seq.), acknowledging receipt of this Order, within thirty (30) days of delivery, from all persons receiving a copy or summary of this Order pursuant to this Paragraph.

Provided, however, that Defendant's obligations with respect to distribution of this Order to each Person who participates in Defendant's Affiliate Program are set forth in Paragraphs III.C and  III.D.

## IX. ACKNOWLEDGMENT OF RECEIPT OF ORDER BY DEFENDANT

**IT IS FURTHER ORDERED** that Defendant, within ten (10) days after receipt of a copy of this Order after its execution and entry, must submit to the Commission a truthful sworn statement acknowledging receipt of this Order.  This requirement applies to any Person falling within Definition E(3) above at the time of entry of this Order.  Moreover, in the event that any

Person first falls within the scope of Definition E(3) at any time within three (3) years after the entry of this Order, said Person must, within ten (10) days thereafter, submit to the Commission a truthful sworn statement acknowledging receipt of this Order.

## X.  FEES AND COSTS

**IT IS FURTHER ORDERED** that each Party to this Order hereby agrees to bear its own costs and attorneys' fees incurred in connection with this action.

## XI.  SEVERABILITY

**IT IS FURTHER ORDERED** that the provisions of this Order are separate and severable from one another.  If any provision is stayed or determined to be invalid, the remaining provisions shall remain in full force and effect.

## XII.  RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification and enforcement of this Order.

## XIII. GOVERNING LAW

The federal statutes, federal rules, and federal regulations referenced herein shall be governed by and interpreted in conjunction with the appropriate federal authority.

## XIV. SCOPE OF RELEASE EFFECTED BY ORDER

It is the intention and understanding of the Parties hereto, in stipulating to and executing this Order, that it shall be effective as a full and final accord and satisfaction and compromise and release as between the United States and Defendant (including Defendant's agents, employees, officers, directors, contractors, attorneys, insurers, successors, and assigns) as to all claims that were or could have been raised or asserted herein.

## XV. DEFENDANT REPRESENTATIONS

Defendant warrants and represents as follows: The instant litigation arises from and

involves Cyberheat, Inc. ("Cyberheat") and the "Top Bucks" Affiliate Program.  The Affiliate

Program was initially owned and administered by Cyberheat.  Subsequent to the filing of the

present litigation, the Affiliate Program was purchased from Cyberheat by TB Advertising

Services, AVV ("TBA") and is accordingly now owned by TBA.  Cyberheat and TBA exist as

solvent legal entities.  Cyberheat's only current relationship to the Affiliate Program is as owner

and lessor of certain equipment, furniture, and fixtures used by the Affiliate Program-related

employees.  TBA currently employs a staffing company that provides contract employees to

TBA and that otherwise manages and administers the Affiliate Program for TBA.

### XVI. EXECUTION IN COUNTERPARTS

This Assignment may be executed in counterparts, each of which shall be deemed an

original, but all of which shall constitute one and the same instrument.


### ORDER


**IT IS SO ORDERED.**

Dated this 5th day of March, 2008.



David C. Bury
United States District Judge